**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Takina Jenkins-Naudain, | Case No. 2:22-cv-01826-CDS-NJK |
| Plaintiff | **Order Granting Motion to Compel Arbitration and Dismissing Case** |
| v. | [ECF Nos. 15, 16] |
| ABM Industries, Inc.; Flowers Baking Co. of Henderson, LLC d/b/a Flowers Foods, | |
| Defendants | |

In this employment-discrimination action, plaintiff Takina Jenkins-Naudain sues her former employer—ABM Industries, Inc.—and one of ABM's customers, Flowers Baking Co. of Henderson (d/b/a Flowers Foods), for discrimination, retaliation, and violations of the Fair Labor Standards Act (FLSA). Her employer, ABM, contracts to provide facilities services to other entities, like Flowers, where Jenkins-Naudain was assigned by ABM to work. The defendants (hereinafter "ABM") move to compel arbitration,[1] arguing that Jenkins-Naudain signed an agreement promising to resolve any dispute through arbitration, rather than the courts.[2] Jenkins-Naudain responds that the arbitration agreement is both unenforceable and unconscionable and that ABM failed to meet and confer with her before filing the motion to compel. ABM replies that Jenkins-Naudain offers no evidence disputing that the signature on

---

[1] The defendants' motion and reply brief are scanned copies and do not comport with this district's local rules requiring that "[d]ocuments filed electronically must be filed in a searchable Portable Document Format (PDF)[.]" LR IA 10-1(b). In the interests of justice and efficiency, I nonetheless resolve the motion but advise counsel to carefully adhere to the local rules in future filings. *See* LR IA 1-4 ("The court may sua sponte or on motion change, dispense with, or waive any of these rules if the interests of justice so require.").

[2] The motion is suitable for disposition without oral argument. LR 78-1.

the agreement is hers, that there is no meet-and-confer requirement before filing a motion to compel arbitration, and that the terms of the agreement are enforceable. Because arbitration is heavily favored in Nevada and with no evidence that Jenkins-Naudain did not sign the agreement, I grant ABM's motion to compel arbitration. Because all of Jenkins-Naudain's claims are subject to arbitration, I dismiss this case.

I.      **Legal standard**

"There is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (1996)). "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Jud. Dist. Court*, 359 P.3d 113, 118–19 (Nev. 2015)).

"Where the Federal Arbitration Agreement (FAA), 9 U.S.C. § 1–16, governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it." *Royz*, 517 P.3d at 907. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Ashbey v.*

*Archstone Prop. Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (stating that the party seeking to compel arbitration has the burden to show both elements) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If the answer to both inquiries is yes, then the court must enforce the arbitration agreement's terms. *Id.* Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

II.     **Background**

The agreement consists of four pages. ECF No. 15-1. The first page is titled "MUTUAL ARBITRATION AGREEMENT," and on the first and second pages, the terms of the agreement are spelled out in detail in five sections (A–E). *Id.* at 2–3. At the bottom of the second page and onto the third, in all caps and in bold, it states that "by signing this agreement, I knowingly and voluntarily waive for any covered claim the right to class, representative, and collective procedures and the right to trial by jury or judge, to the full extent permitted by applicable law." *Id.* at 3–4. The document explains that the employee "retain[s] all other rights, including [her] right to counsel, to call and cross-examine witnesses, and to have [her] claims addressed by an impartial fact finder." *Id.* at 4. And it further details that the employee agrees that she was advised to seek legal advice before signing the agreement and acknowledges that she "carefully read this agreement" and understands its terms. *Id.* The document bears the signature of ABM's Vice President of Human Resources and is dated September 18, 2014. *Id.* Next to that signature, there are three lines for the employee's signature, name, and the date. *Id.* Jenkins-Naudain's signature does not appear on this page. *Id.* Further, in the corner of each of the first three pages, there is a blank line for the employee's initials (*i.e.*, "Initial _____"). *Id.* at 2–4. Jenkins-Naudain's initials likewise do not appear on those lines. *Id.*

1    The fourth page of the agreement bears the same title as the first page: "MUTUAL

2    ARBITRATION AGREEMENT." *Id.* at 5.[3] Underneath the title, the exact same paragraph that

3    appeared on the second and third pages—indicating what the employee is knowingly and

4    voluntarily agreeing to by signing—is printed again verbatim. *Id.* at 3–5. Underneath the second

5    iteration of the paragraph, there is an electronic signature from "Takina Jenkins Naudain"

6    bearing a timestamp of 19:40 GMT on August 21, 2018, and listing an ID number and an IP

7    address. *Id.* at 5. Underneath the electronic signature, Jenkins-Naudain's full name is printed,

8    along with the words "Employee Acknowledgement." *Id.*

9    **III.    Discussion**

10    Arguing that Jenkins-Naudain signed the arbitration agreement during her employee

11    onboarding, ABM moves to compel arbitration in this case. ECF No. 15. Jenkins-Naudain

12    responds that the agreement is unenforceable because it consists of two separate documents and

13    because discovery would be limited by the arbitrator. ECF No. 18 at 6–8. And she maintains that

14    ABM failed to meet and confer with her before filing its motion to compel arbitration. *Id.* at 9.

15    Finally, she asks that if I do compel arbitration, I should stay—rather than altogether dismiss—

16    the case. *Id.* at 9–10.

17    *a.    The agreement is not comprised of two separate documents.*

18    As a threshold matter, I decline to read the agreement as two separate documents, as

19    Jenkins-Naudain urges. Identical language appears in "the agreement" and in "the

20    acknowledgement." It is as if Jenkins-Naudain signed her name next to ABM's company

21    representative's signature because she agreed to the same exact language as ABM did. As ABM

22    ───────────────

23    [3] As discussed infra, Jenkins-Naudain's position is that the agreement is comprised of two separate
documents, with the first three pages constituting one document and the final page constituting a
second. She characterizes the first three pages as "the 2014 document" based on the date that ABM's

24    company representative signed it, and she calls the fourth page "the 2018 document," based on the date
stamp that appears next to her electronic signature. ECF No. 18 at 6. ABM maintains that there is only
one document, and it refers to each section as "the agreement" and "the acknowledgement" respectively.
ECF No. 22 at 2.

points out, Jenkins-Naudain "does not deny signing the acknowledgement[,] nor does she deny reading the Arbitration Agreement." ECF No. 22 at 3. She presents no evidence disputing that the electronic signature is hers. Further, the same IP address used to electronically sign the agreement was used to complete Jenkins-Naudain's other onboarding documents. ECF No. 22 at 4 (citing Direct Deposit Form, ECF No. 22-1; Emergency Contact Information, ECF No. 22-2; W-4 Form, ECF No. 22-3); ECF No. 15-2 at ¶ 26. These documents were all signed on the same date as the arbitration agreement, August 21, 2018. This suggests that the same person who signed the other onboarding documents also signed the arbitration agreement.

Joseph Selby, Director of Human Resources Business Functions for ABM, oversees the digital employee onboarding systems and process for ABM. Selby Decl., ECF No. 15-2 at ¶ 3. In his sworn declaration, he explains that Jenkins-Naudain had to sign the agreement as a condition of her employment, and he further declares that "[a] complete copy of the [a]rbitration [a]greement is provided to candidates in electronic form during the onboarding process." *Id.* at ¶ 6. He further states that "[b]ecause the [a]rbitration [a]greement is now provided in electronic format, candidates are no longer required to sign each page. They are instead asked to review the text of the [a]rbitration [a]greement in electronic form and sign the acknowledgement on the final page . . . which is then kept in the candidate's file to show his or her agreement to arbitrate." *Id.* He explains the process through which candidates complete their onboarding, and he states that "[o]n August 21, 2018, at approximately 19:40 GMT, Ms. Jenkins knowingly and voluntarily agreed to abide by the terms of the [a]rbitration [a]greement by electronically signing the acknowledgement on the final page." *Id.* at ¶ 7.

Again, Jenkins-Naudain does not file any declaration or present any evidence disputing that the electronic signature is hers. And even if she did, it is well established under Nevada law

1  that electronic signatures hold the same validity as ink signatures.[4] Nev. Rev. Stat. § 719.240 ("A

2  record or signature may not be denied legal effect or enforceability solely because it is in

3  electronic form" and "[i]f a law requires a signature, an electronic signature satisfies the law.");

4  Nev. Rev. Stat. § 719.260 ("An electronic record or electronic signature is attributable to a person

5  if it was the act of the person. The act of the person may be shown in any manner, including a

6  showing of the efficacy of any security procedure applied to determine the person to whom the

7  electronic record or electronic signature was attributable."); *see also Romero v. Watkins and Shepard*

8  *Trucking, Inc.*, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (unpublished). The lack of evidence

9  to the contrary and the evidence showing that the same IP address was used for all of the

10  onboarding forms—including the arbitration agreement—supports the conclusion that Jenkins-

11  Naudain signed the form and agreed to its contents. And Nevada courts hold that, "[h]e who

12  signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of

13  another contracting party, is conclusively presumed to know its contents and to assent to

14  them[.]" *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970). In signing the

15  agreement, Jenkins-Naudain is presumed to know its contents and agree to be bound by them.

16  Selby's declaration further demonstrates that Jenkins-Naudain was provided with a "complete

17  copy" of the agreement during the onboarding process, so she knew what she was agreeing to,

18  despite her argument about there being two separate documents. ECF No. 15-2 at ¶ 6. I therefore

19  read all four pages of the agreement and the acknowledgement together and conclude that

20  Jenkins-Naudain signed it and agreed to be bound by it.[5]

21

22  [4] During the onboarding process, Jenkins-Naudain consented to use an electronic signature, which
involved her agreeing that her "electronic signature is the legal equivalent of [her] manual signature."
ECF No. 15-2 at ¶ 14.

23

24  [5] Even if the "agreement" and the "acknowledgement" were read separately—in which case Jenkins-
Naudain's signature does not appear on the *agreement* itself—my conclusion would be the same. *See* 9
U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA 'requires a writing,
it does not require that the writing be signed by the parties.'" (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815

1        *b.*       *The arbitration agreement is valid and encompasses Jenkins-Naudain's claims.*

2        Turning to the language of the agreement itself, I am unpersuaded by Jenkins-Naudain's

3 contention that it is unenforceable. The agreement between ABM and Jenkins-Naudain states

4 that it "is governed by and enforceable under the [FAA]" and that it "shall be interpreted under

5 the FAA." ECF No. 15-1 at 3. It identifies that "[f]inal and binding arbitration before a single,

6 neutral arbitrator shall be the exclusive remedy for any '[c]overed [c]laim,'" which is defined as

7 "any claim (except a claim that by law is non-arbitrable) that arises between [Jenkins-Naudain]

8 and [ABM]" or its past, present, or future parents, subsidiaries, affiliates, officers, directors, or

9 employees, including—but not limited to—claims related to her hiring, employment, or

10 severance. *Id.* at 2. The agreement also specifically includes claims against third parties, such as

11 clients (like Flowers): "This agreement includes any [c]overed [c]laim brought against a third-

12 party, including but not limited to any client(s) and/or vendor(s) of the [c]ompany, and this

13 provision can be enforced by any such third-party through a motion to compel arbitration[.]" *Id.*

14 Covered claims also include those arising under the FLSA and those for wrongful termination,

15 discrimination, harassment, retaliation. *Id.*

16        Jenkins-Naudain "bears the burden of proving that the [agreement] is unenforceable."

17 *Mortensen v. Bresnan Comms., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). And in Nevada, both

18 procedural and substantive unconscionability must be shown to invalidate a contract as

19 unconscionable. *U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32, 40 (Nev. 2018) (citing *Burch*

20 *v. Second Judicial Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002)). Procedural unconscionability generally

21 concerns a party's failure to reasonably inform another about the consequences of a contract. *See*

22 *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by U.S. Home Corp.*,

23 415 P.3d 32. Substantive unconscionability, on the other hand, "focuses on the one-sidedness of

24  

---

F.2d 840, 846 (2d Cir. 1987))); *see also Tallman*, 359 P.3d at 119 ("While NRS 38.219(1) requires that the
arbitration agreement be 'contained in a record,' it does not require that the written record of the
agreement to arbitrate be signed." (citation omitted)).

the contract terms." *Id.* at 1162–63 (citations omitted). "Neither the Nevada Supreme Court, nor the Ninth Circuit[, has] adopted a list of factors to analyze whether a contract is impermissibly one-sided[.]" *Velasquez v. S.B. Rest. Co.*, 2010 WL 4683720, at *3 (D. Nev. Nov. 9, 2010). Courts have looked to California case law to determine substantive unconscionability using a set of factors. *See, e.g., id.* (citing *Armendariz v. Foundation Health Psychcare*, 6 P.3d 669, 692 (Cal. 2000)). Such factors include whether there is "1) [a] neutral arbitrator; 2) more than minimal discovery; 3) [a] written award; 4) [the] types of relief available; and 5) unreasonable costs. *Id.*

Jenkins-Naudain fails to show either form of unconscionability. To support her contention that this agreement is unconscionable, Jenkins-Naudain heavily relies on a 2017 case out of the Central District of California, in which the court found that an ABM arbitration agreement was both substantively and procedurally unconscionable. ECF No. 18 at 7 (citing *Christian v. ABM Onsite Services-West, Inc.*, 2017 WL 11632815, at *1 (C.D. Cal. June 8, 2017)). She argues that because that agreement was found to be unconscionable, so too should this one. *Id.* ABM explains that the agreement in that case is not the same one that ABM uses now or used when Jenkins-Naudain signed it.[6] ECF No. 22 at 5–6. It further emphasizes that *Christian* involved the application of California—not Nevada—law and reiterates that "California and Nevada have opposing policies regarding the favorability of arbitration." *Id.* at 5.

I find Jenkins-Naudain's unconscionability argument somewhat conclusory. Aside from pointing to the *Christian* case and her belief that the defendant in *Christian* is "related" to the ABM entity in this case, she does not argue how the instant agreement is unconscionable. Again, Jenkins-Naudain does not dispute that she read the agreement or that she understood it when she signed the document during her onboarding. She points to *Christian* and notes that "the

---

[6] "[T]he arbitration agreement at issue in *Christian*[] is not the same arbitration agreement in this matter. It appears [p]laintiff merely assumed that because the *Christian* matter involved an ABM subsidiary, the arbitration agreements must be identical. This is incorrect as ABM and its subsidiaries have revised and updated their arbitration agreements over the last six years." ECF No. 22 at 5.

1   purported arbitration agreement at issue was substantively unconscionable as the plaintiff-
2   employee was not guaranteed complete discovery vehicles, such as depositions." ECF No. 18 at 7.
3   She continues that because the agreement in this case "would similarly limit Jenkins' discovery
4   efforts to what 'the arbitrator considers necessary,'" rather than the "broader edict of Federal
5   Rule of Civil Procedure 26." *Id.* ABM urges that Nevada courts have already addressed this issue
6   and found that failure to provide for judicially monitored discovery is insufficient to show
7   unconscionability because the FAA preempts state laws invalidating an arbitration agreement
8   for that reason. ECF No. 22 at 6.

9           The agreement here indicates that arbitration will be conducted under the American
10  Arbitration Association (AAA) Employment Arbitration Rules and Mediation Procedures, and it
11  directs the employee to contact ABM's legal department, contact AAA by phone, or view AAA's
12  website for a copy of the rules. ECF No. 15-1 at 2. Under AAA Rule 9, "[t]he arbitrator shall have
13  the authority to order such discovery, by way of deposition, interrogatory, document
14  production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of
15  the issues in dispute, consistent with the expedited nature of arbitration." *Employment Arbitration*
16  *Rules and Mediation Procedures*, American Arbitration Association,
17  https://www.adr.org/sites/default/files/EmploymentRules-Web.pdf (last visited July 19, 2023).
18  Jenkins-Naudain was instructed on three ways that she could obtain the AAA rules, which
19  clearly show that the arbitrator has discretion to limit the scope of discovery. And as ABM
20  notes, the Nevada Supreme Court has recognized that "[n]early all arbitration agreements forgo
21  some procedural protections, such as the right to a trial by jury or court-monitored discovery."
22  *U.S. Home Corp.*, 415 P.3d at 42 (citations omitted). Further, "[t]he FAA and UAA suggest that
23  public policy favors such waivers in the arbitration setting because arbitration provides a
24  quicker and less costly means for settling disputes." *Id.* So I find Jenkins-Naudain's argument
    unavailing. The agreement is not unconscionable merely because discovery would be limited.

She does not sufficiently discuss any of the other factors relevant to an unconscionability determination, so I do not address them further. Jenkins-Naudain fails to meet her burden of demonstrating that the arbitration agreement is unenforceable, while ABM has shown that it is valid under the FAA and Nevada law.

        *b.*      *The defendants were not required to meet and confer with Jenkins-Naudain before filing their motion to compel arbitration.*

Jenkins-Naudain asserts that ABM's "failure to properly meet and confer further suggests" that I should deny its motion to compel arbitration. ECF No. 18 at 9. Her counsel describes himself as "always reasonable" and acknowledges that although ABM's counsel was "not bound by the important requirements of LR IA 1-3(f), LR 26-6(b), or otherwise," ABM's counsel should have "fully discuss[ed] and engage[d] with Jenkins prior to seeking judicial intervention[.]" *Id.* But those two local rules are inapplicable here. The first, LR IA 1-3(f), is a definition of the term "meet and confer." Nowhere in the rule does it state that a party must meet and confer with opposing counsel before filing a motion to compel arbitration. Local rule 26-6 concerns discovery motions and directs that "[d]iscovery motions will not be considered unless the movant . . . has made a good-faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion" and submits a declaration detailing the results of the meet-and-confer conference. LR 26-6(c). As ABM notes, "[m]otions to compel arbitration are jurisdictional motions and not discovery motions. ECF No. 22 at 2. Jenkins-Naudain identifies no binding authority—and I can find none—requiring that ABM must have met and conferred with Jenkins-Naudain before filing its motion to compel arbitration. This is thus an improper basis on which to deny the motion.

        *c.*      *Dismissal of this case is appropriate.*

ABM seeks to dismiss this case because Jenkins-Naudain's claims are all subject to arbitration. ECF No. 15 at 12–13. In opposition, Jenkins-Naudain urges that a stay "remains the

most prudent and efficient path forward." ECF No. 18 at 9. The Ninth Circuit recognizes that district courts have discretion in deciding whether to dismiss or stay a case after granting a motion to compel arbitration. Typically, there is a "preference for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). But "[a] district court may dismiss an action, rather than stay it, when all of the issues are arbitrable." *2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 754 F. App'x 596, 597 (9th Cir. 2019) (mem.) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). Because all of Jenkins-Naudain's claims are subject to arbitration, dismissal without prejudice is appropriate to preserve judicial resources and manage the court's docket. *See, e.g., Villa v. Gruma Corp.*, 2020 WL 433098, at *2 (E.D. Cal. Jan. 28, 2020) (dismissing rather than staying case where all of plaintiffs' claims were subject to arbitration); *Calzadillas v. Wonderful Co., LLC*, 2019 WL 5448308, at *4 (E.D. Cal. Oct. 24, 2019) (same).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 16]** and motion to compel arbitration **[ECF No. 15] are GRANTED**. The Clerk of Court is directed to CLOSE THIS CASE.

DATED: July 20, 2023

_____
Cristina D. Silva
United States District Judge

11